## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Mary Lansden Swafford, as trustee for the Mary Lansden Swafford GST Exemption Residuary Trust, on behalf of herself and all others similarly situated,<br><br>                  Plaintiff,<br><br>v.<br><br>Ovintiv Inc., and Ovintiv Mid-Continent Inc.,<br><br>                Defendants. | Civil Action No. 21-CV-210-SPS |

---

## PLAINTIFF'S UNOPPOSED MOTION TO CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES, TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT, TO APPROVE THE FORM AND MANNER OF NOTICE, AND TO SET A DATE FOR A FINAL APPROVAL HEARING

---

Respectfully submitted,

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

**COUNSEL FOR PLAINTIFF**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 1

Summary of the Litigation ..................................................................................................... 1

    Pleading Stage ................................................................................................................... 1

    Discovery .......................................................................................................................... 2

    Plaintiff's Motion for Class Certification ......................................................................... 3

    Settlement Efforts ............................................................................................................. 4

Argument & Authority ........................................................................................................... 5

    A.  The Court Should Certify the Settlement Class for Settlement Purposes ................. 5

        1.  Numerosity ............................................................................................................ 6

        2.  Commonality ......................................................................................................... 7

        3.  Typicality .............................................................................................................. 8

        4.  Adequacy of Representation ................................................................................. 9

        5.  Predominance ...................................................................................................... 10

        6.  Superiority ........................................................................................................... 11

    B.  The Court Should Grant Preliminary Approval of the Proposed Settlement ........... 12

        1.  Plaintiff and Her Counsel Have Adequately Represented the Class .................. 14

        2.  The Proposed Settlement Was Negotiated at Arm's Length .............................. 15

        3.  The Relief Provided for the Class Is Adequate, Taking into Account: ............... 16

            (i)   The Costs, Risks, and Delay of Trial and Appeal ...................................... 16

            (ii)  The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims ............ 17

            (iii) The Terms of Any Proposed Award of Attorney Fees, Including Timing of Payment ................................................................................... 18

            (iv) Any Agreement Required to be Identified under Rule 23(e)(3) .................. 18

        4.  The Proposal Treats Class Members Equitably Relative to Each Other ............. 18

    C.  The Court Should Preliminarily Approve the Proposed Notice of the Settlement to the Settlement Class .................................................................................................. 19

    D.  Appointment of JND Legal Administration as Settlement Administrator Is Proper ........................................................................................................................ 21

    E.  Appointment of an Escrow Agent Is Proper ............................................................ 21

Conclusion ............................................................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Fed. Power Comm'n*,
    425 F.2d 1350 (10th Cir. 1972) .......................................................................12

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*,
    275 F.R.D. 325 (D. Kan. 2011).......................................................................11

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
    167 F. Supp. 2d 1216 (D. Colo. 2001) ..........................................................12

*Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P., et al.*,
    No. 17-CV-134-HE (W.D. Okla. 2017) .....................................................7, 9

*Cecil v. BP Am. Prod. Co.*,
    No. CIV-16-410-KEW (E.D. Okla. 2018)............................................. 7, 9, 17

*CGC Holding Co. v. Broad & Cassell*,
    773 F.3d 1076 (10th Cir. 2014) .....................................................................10

*Cline v. Sunoco, Inc. (R&M)*,
    333 F.R.D. 676 (E.D. Okla. 2019) ................................................................. 6

*D'Amato v. Deutsch Bank*,
    236 F.3d 78 (2d Cir. 2001)............................................................................15

*DG ex rel. Stricklin v. Devaughn*,
    543 F.3d 1188 (10th Cir. 2010) .................................................................5, 7, 8

*Harris v. Chevron U.S.A., Inc., et al.*,
    No. 19-CV-355-SPS (E.D. Okla. 2019)......................................................7, 9

*Henry Price Trust v. Plains Mktg., L.P.*,
    No. 19-CV-390-KEW (E.D. Okla. 2021)....................................................... 9

*Horn v. Associated Wholesale Grocers, Inc.*,
    555 F.2d 270 (10th Cir. 1977) ....................................................................... 6

*In re Motor Fuel Temperature Sales Practices Litig.*,
    271 F.R.D. 263 (D. Kan. 2010)................................................5, 11, 12, 13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570(S.D.N.Y. 2008) ...........................................................15

*In re Urethane Antitrust Litig.*,
    768 F.3d 1245(10th Cir. 2014) .....................................................................10

*Johnston v. Camino Nat. Res., LLC*,
    No. 19-CV-2742-CMA-SKC (D. Colo. 2020) ............................................. 9

*Lucas v. Kmart Corp.*,
    234 F.R.D. 693 (D. Colo. 2006)............................................................. 12, 16

ii

*McNeill v. Citation Oil & Gas Corp.*,
   No. 17-CIV-121-RAW (E.D. Okla. 2019) ..................................................... 9

*McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*,
   No. CIV-17-308-KEW (E.D. Okla. 2018)............................................... 7, 10

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ................................................................... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)..................................................................................19

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
   923 F.3d 779 (10th Cir. 2019) ................................................... 3, 7, 8, 11

*Reed v. GM Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...................................................................15

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ................................................................. 9

*Sears v. Atchison, Topeka & Santa Fe Ry. Co.*,
   749 F.2d 1451 (10th Cir. 1984) ...............................................................12

*Speed v. JMA Energy Co.*,
   CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019) .......................................10

*Swafford v. Newfield Exploration Co., et al.*,
   No. 19-cv-02746 (D.Colo. 2019) ...........................................................1–3

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ................................................................... 5

*Trujillo v. Colo.*,
   649 F.2d 823 (10th Cir. 1981) .................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ......................................................................... 7, 10

*Wilkerson v. Martin Marietta Corp.*,
   17 F.R.D. 273 (D. Colo. 1997) ................................................................15

**Rules**
Fed. R. Civ. P. 23 .................................................................................passim

**Secondary Sources**
Manual for Complex Litigation § 13.14 (4th ed. 2004) ....................................12
Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10 (5th ed. 2011)................... 7

# INTRODUCTION

Plaintiff has obtained an outstanding recovery for the Settlement Class after nearly two years of litigation concerning the class claims that have now been resolved. Specifically, Plaintiff has reached a proposed settlement with Defendants worth $19.5 million in cash for the Settlement Class to resolve natural gas royalty underpayment claims under Oklahoma law.

Having reached this agreement with Defendants and recovery for the Settlement Class, Plaintiff now respectfully requests that the Court preliminarily approve the Settlement. Specifically, Plaintiff requests that the Court: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Class; (4) appoint Reagan E. Bradford and Ryan K. Wilson of Bradford & Wilson PLLC as Co-Lead Class Counsel for the Settlement Class; (5) approve the form and manner of the proposed Notice; (6) appoint a Settlement Administrator; (7) appoint an Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, and Case Contribution Award to Plaintiff.[1] Plaintiff and Defendants have agreed to the form of the Preliminary Approval Order, which is Exhibit 1 to the attached Settlement Agreement (**Ex. 1**).

# SUMMARY OF THE LITIGATION

### *Pleading Stage*

Plaintiff filed her original Complaint on September 25, 2019, in the United States District Court for the District of Colorado. *See Swafford v. Newfield Exploration Co., et al.*, No. 18-

---

[1] Unless otherwise defined herein, Plaintiff incorporates by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

cv-02746 (D.Colo. 2019) at Doc. 1 ("*Swafford I*"). Plaintiff alleged that Defendants[2] violated Oklahoma law by improperly deducting post-production costs from natural gas royalties. *Id.* Plaintiff filed an amended complaint on October 22, 2019, with discreet changes to the allegations. *Id.* at Doc. 15. Defendants filed a motion to dismiss the amended complaint on November 8, 2019. *Id.* at Doc. 21. Plaintiff responded to the motion to dismiss on November 29, 2019. *Id.* at Doc. 24. Defendants then filed their reply on December 13, 2019. *Id.* at Doc. 25. The motion to dismiss was granted in part and denied in part nearly a year later on September 25, 2020. *Id.* at Doc. 62. During the pendency of the motion to dismiss, the parties engaged in extensive discovery.

*Discovery*

Rather than engage in early, protracted discovery fights, the parties agreed at the outset that certain seminal categories of documents and information would be produced by Defendants without formal discovery requests. *See Swafford I* at Doc. 33.[3] Under that agreement, Defendants produced tens of thousands of bates numbered documents, including oil and gas leases, payment detail, marketing contracts, plant statements, and other related information.

---

[2] Defendants were previously named "Newfield Exploration Company" and "Newfield Exploration Mid-Continent Inc.," but are now known as Ovintiv Inc. and Ovintiv Mid-Continent Inc. Plaintiff refers to those entities as "Defendants."

[3] (agreeing to informal production of "(1) certain royalty payment and accounting information from September 25, 2014 to the most recent data available at the time the information is gathered for informal production for wells in Oklahoma with production on or after September 25, 2014 where Defendants are or were the operator; (2) gas marketing or service contracts applicable to wells in Oklahoma with production on or after September 25, 2014 where Defendants are or were the operator that were in effect from September 25, 2014 to the most recent data available at the time the information is gathered for informal production; (3) certain plant statements for certain months from September 25, 2014 to the most recent data available at the time the information is gathered for informal production applicable to wells in Oklahoma with production on or after September 25, 2014 where Defendants are or were the operator; (4) Newfield's oil and gas leases applicable to wells in

Plaintiff then served her first set of written discovery on April 24, 2020, to which Defendants responded on June 16, 2020. Defendants served their own discovery to Plaintiff on May 29, 2020, to which Plaintiff responded on July 22, 2020. Plaintiff went on to serve additional discovery requests on October 22, 2020, and January 20, 2021. Defendants responded to those requests on November 23, 2020, and February 19, 2021, respectively. To facilitate review and production of electronically stored information, the parties also entered into a Stipulated Order Regarding Discovery, Including Electronically Stored Information. *See Swafford I* at Doc. 68.

In the course of discovery, Plaintiff's counsel met and conferred with Defendants' counsel on repeated occasions and exchanged many communications, by letter, email, and phone, to obtain discovery or understand the content of that which had been produced. As a result of Plaintiff's zealous efforts, Defendants produced voluminous data and documents to Plaintiff throughout the course of the litigation. Specifically, Defendants have produced nineteen (19) volumes of discovery, resulting in over 100,000 bates numbered documents.

Beyond intensive document discovery, Plaintiff's counsel also deposed several of Defendants' personnel, including corporate representatives on a host of topics.

### *Plaintiff's Motion for Class Certification*

These discovery efforts culminated in the filing of Plaintiff's Motion for Class Certification on January 20, 2021. *See Swafford I* at Doc. 74. To file the motion, Plaintiff's counsel reviewed and categorized thousands of oil-and-gas leases by royalty clause, as directed by the Tenth Circuit in *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019).

---

Oklahoma with production on or after September 25, 2014 where Defendants are or were the operator; and (5) Plaintiff's documents relating to Plaintiff's royalty interest.").

Following the filing of Plaintiff's certification motion, the parties began settlement discussions in earnest.

*Settlement Efforts*

The parties engaged in settlement discussions throughout the litigation before reaching agreement. Prior to formal mediation, the parties—including their counsel and experts—discussed settlement to understand the data requirements for negotiation, to ensure that the parties were working from the same set of information, and to further understand the stances and assumptions from which each party was operating. The parties agreed to mediate and engage Steve McNamara of Hall Estill and Dispute Resolution Consultants as mediator, who has both defended and prosecuted royalty underpayment class actions.[4] After a full day of mediation (and extending into the evening) in Tulsa, Oklahoma, on May 6, 2021, the parties signed a term sheet documenting resolution terms for some of the claims at issue in this case. Following the executed term sheet, the parties ultimately negotiated a more fulsome settlement of all claims originally asserted. The parties then spent weeks memorializing the terms of settlement in a formal settlement agreement. On July 14, 2021, the parties executed the Settlement Agreement (**Ex. 1**). As part of the settlement, the parties agreed to dismiss *Swafford I* without prejudice and file this action to implement the Settlement Agreement because, *inter alia*, many of the class wells are located in this District, this Court is more accessible to Class Members, and this Court has repeated experience considering and implementing royalty underpayment class action settlements.

---

[4]  *See* http://www.drc-ok.com/mcnamaracv.

## ARGUMENT & AUTHORITY

**A.    The Court Should Certify the Settlement Class for Settlement Purposes**

In reviewing a proposed settlement in a class action, the court determines whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Further, Rule 23(b) examines whether common questions predominate the dispute and whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *Id.* (citation omitted). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiff and Defendants have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiff as class representative; and (3) the appointment of Reagan E. Bradford and Ryan K. Wilson of Bradford & Wilson PLLC as Co-Lead Class Counsel for the Settlement Class. *See* **Ex. 1**, Settlement Agreement at 3. Accordingly, Plaintiff moves the Court to certify Settlement Class consisting of:

> All non-excluded persons or entities who are royalty owners in Oklahoma oil-and-gas wells where Defendants (including their affiliated predecessors and affiliated successors) are or were the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) during the Claim Period. The Class claims relate to or arise

from royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).

Excluded from the Settlement Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) the State of Oklahoma or any of its agencies or departments that own royalty interests; (3) Defendants, their affiliates, predecessors, and employees, officers, and directors; (4) any publicly traded company or their affiliated entity that produces, gathers, processes, or markets gas; (5) overriding royalty owners and others whose interest was carved out from the lessee's interest; (6) royalty owners who have already filed and still have pending individual lawsuits for underpayment of royalties against Defendants at the time suit is filed herein; (7) Charles David Nutley, Danny George, Dan McClure, Kelly McClure Callant, William L. Galbreath, Verdeen L. Slatten, Jack A. Slatten, Verdeen L. Slatten Family Limited Partnership, Neva M. Dorman, Ann Ellis Boles, Fischer-Jones, LLC, B.N. Taliaferro, Jr., Jack B. Searle, Tamara D. Searle, OGI, Inc., Shepherd Royalty LLC, and their relatives or trusts; and (8) officers of the Court.

*See* **Ex. 1**, Settlement Agreement at 9–10. Certification of the Settlement Class for settlement purposes furthers the interests of Settlement Class Members and Defendants by allowing this case to be settled on a class-wide basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus this Court should certify the Settlement Class.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Class consists of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. Specifically, there are over 28,000 Class Members. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1).").

6

Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Of course, "'[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Plaintiff need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; Newberg et al., Newberg on Class Actions § 3:10, at 272–73 (5th ed. 2011).

Federal courts in Oklahoma have certified similar class actions many times, finding common issues existed for oil-and-gas royalty underpayment class claims. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW, Doc. 224 (E.D. Okla., Nov. 5, 2018) (preliminarily approving royalty underpayment class action for settlement purposes); *Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P., et al.*, No. 17-CV-134-HE, Doc. 41 (W.D. Okla. Dec. 7, 2017) (same); *Harris v. Chevron U.S.A., Inc., et al.*, No. 19-cv-355-SPS, Doc. 22 (E.D. Okla. Nov. 19, 2019) (same); *McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*, Case No. CIV-17-308-KEW, Doc. 53 (E.D. Okla. Sept. 6, 2018) (same). Further still, federal courts in Oklahoma have certified these claims on a contested basis. *See, e.g., Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019).

Plaintiff's underpayment claim involves common questions of law and fact, including whether the Class leases are subject to the implied duty to market under Oklahoma law, or otherwise prohibit deductions, and whether Defendants breached those duties by improperly deducting post-production costs. Again, the Tenth Circuit recently affirmed class certification of an oil-and-gas underpayment claim under Oklahoma law. *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019).

Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9.

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." But "'[e]very member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement. *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Plaintiff's claims are typical of the Settlement Class claims because Plaintiff alleges that she owns a royalty interest under a lease subject to the implied duty to market and that Defendants breached that duty through improper deductions. Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Class and Plaintiff. So all Class Members who received improper deductions suffered the same injury arising out of similar facts. Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9. Plaintiff satisfies typicality.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor its counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiff or her counsel and other members of the Settlement Class. To the contrary, Plaintiff shares the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiff has done so, vigorously prosecuting this case through qualified counsel. Plaintiff's counsel are highly experienced in class actions, particularly class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiff's counsel have been appointed as lead or co-lead counsel in multiple previous class actions, including several class actions in this Court. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018) (Plaintiff's counsel appointed co-lead class counsel; $221 million gross settlement fund approved); *Henry Price Trust v. Plains Mktg., L.P.*, No. 19-CV-390-KEW (E.D. Okla. 2021) (Plaintiff's counsel appointed co-lead counsel; $10 million class settlement approved); *Johnston v. Camino Nat. Res., LLC*, 19-CV-2742-CMA-SKC (D. Colo. 2020) (Plaintiff's counsel appointed co-lead counsel; $2.1 million class settlement approved); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019) (Plaintiff's counsel appointed co-lead class counsel; $4.9 million approved class settlement); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CIV-121-RAW (E.D. Okla. 2019) (Plaintiff's counsel appointed co-lead class counsel; $3 million approved class settlement); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018)

(Plaintiff's counsel appointed co-lead class counsel; $4.73 million approved class settlement); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018) (Plaintiff's counsel appointed co-lead class counsel; $1.3 million approved class settlement); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019) (Plaintiff's counsel appointed lead class counsel $800,000 approved class settlement). Moreover, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9. Plaintiff and her counsel satisfy typicality.

## 5. Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiff and the Class's claims stem from a

"'common nucleus of operative facts,'" common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

The Settlement Class satisfies predominance. The common questions of lease language and whether Defendants took improper deductions predominate over individual issues, as the Tenth Circuit recently affirmed in *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019). This alleged common conduct gave rise to each Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by representation. Because every Class Member's claims arise from Defendant's alleged systematic and uniform payment methodology, common questions predominate over any individual issues. Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9. Plaintiff satisfies predominance.

### 6. Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here. Here, although liability may be substantial in the aggregate, the average owner's damages likely would not warrant the bringing of individual lawsuits. Nor are there any anticipated difficulties managing this case as a class action for settlement purposes only. For these reasons, these claims for royalty underpayment are uniquely well-situated for classwide resolution. Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 9. This is an clear instance in which a class action is the superior method of fair and efficient adjudication.

**B.     The Court Should Grant Preliminary Approval of the Proposed Settlement**

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the *Court* conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which

12

point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

In this Motion, Plaintiff is asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Fortunately, Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

> (A) the class representative and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed settlement here checks each of these boxes.

### 1. Plaintiff and Her Counsel Have Adequately Represented the Class

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018. Plaintiff's counsel have engaged in significant discovery efforts with Defendants since this dispute has been ongoing. Plaintiff's counsel have obtained, reviewed, and analyzed, *inter alia*, gigabytes of electronic data, including check stubs, pay detail, and myriad marketing arrangements. Plaintiff and her counsel have engaged experts to review the information produced by Defendants so that the Parties could appropriately consider the possibility of resolution. Over a period of over six months, counsel for Plaintiff worked with their experts in an effort to fully understand the accounting data provided by Defendants and develop a damages model. This included multiple meetings, communications, and exchanges of additional data and material between the Parties and their experts. Further still, the parties here have engaged in extensive settlement negotiations across several settings and dozens of phone calls to arrive at the proposed settlement.

Further, as discussed *supra*, Plaintiff's counsel has served as counsel in several prior class action settlements involving the exact deduction claims at issue in this case. Additionally, Plaintiff's counsel is involved in several other currently pending putative class actions for the exact deduction claims at issue in this case. All of that is to say, the efforts of Plaintiff's counsel in other cases have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendants is on par with the values reached in similar oil-and-gas class actions.

Finally, Plaintiff has remained actively involved in this litigation since filing and has thus adequately represented the Settlement Class.

### 2.   The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiff's counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with numerous experts. The Settlement is the product of arm's-length negotiations between Plaintiff and Defendants and their experienced counsel at a point when Plaintiff and Defendants possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Further, the Settlement was reached through mediation: "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); see also *D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the parties engaged Steve McNamara, who has both defended and prosecuted royalty underpayment class actions in Oklahoma. Mr. McNamara's integral involvement in the mediation and

settlement process further assures that the Settlement is arm's-length. The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. So the second factor supports preliminary approval.

### 3. The Relief Provided for the Class Is Adequate, Taking into Account:

#### (i)    The Costs, Risks, and Delay of Trial and Appeal

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendants deny any wrongdoing giving rise to liability. *See* **Ex. 1**, Settlement Agreement at 3. Defendants have entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *See id.* Plaintiff is optimistic about her chances of success at trial but recognizes there are a number of significant obstacles she would still have to overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

>    ***(ii)    The Effectiveness of Any Proposed Method of Distributing Relief to
>    the Class, Including the Method of Processing Class Members'
>    Claims***

The proposed distribution method for this common-fund Settlement will be highly ef-

fective. Pursuant to the Settlement Agreement, Defendants will provide Plaintiff's Counsel

their accounting data for the class period for the class wells located in Oklahoma, including

the names, last known addresses, and tax identification numbers of Class Members. *See* **Ex.**

**1**, Settlement Agreement at 13. The Settlement Administrator will make reasonable efforts to:

(a) verify the last-known address of potential Class Members provided by Defendants and (b)

locate current addresses of any potential Class Members for whom Defendants have not pro-

vided addresses. *Id.* at 14.

Subject to the Court's approval, Plaintiff's Counsel will allocate the Net Settlement

Fund to individual Class Members who are participating in the Settlement considering nu-

merous factors that are regularly used to allocate class settlements of this nature. *See* **Ex. 1**,

Settlement Agreement at 21–24. The Net Settlement Fund will then be distributed by the Set-

tlement Administrator as soon as reasonably possible after final approval has been obtained

for the Settlement. The Settlement Agreement specifies deadlines for distributing the Net Set-

tlement Fund. *See* **Ex. 1**, Settlement Agreement at 25. Plaintiff's counsel has had this distri-

bution method approved and utilized in other deduction class-action settlements. *See, e.g.*,

*Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW (E.D. Okla. 2018).

Importantly, as opposed to many other court-approved class action settlements in fed-

eral court, the Settlement Agreement doesn't require Class Members to submit claim forms

in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members

who don't affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 25.

### (iii) *The Terms of Any Proposed Award of Attorney Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 15. Plaintiff's Counsel anticipate that they will seek a fee award of no more than forty percent of the Gross Settlement Fund. Plaintiff's counsel have obtained an excellent recovery for the Class Members ($19.5 million).

Under the Settlement Agreement, Attorneys' Fees awarded to Plaintiff's Counsel by the Court shall be paid to Plaintiff's Counsel from the Gross Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 29.

### (iv) *Any Agreement Required to be Identified under Rule 23(e)(3)*

The Parties have entered into the Settlement Agreement, which is submitted in full at **Ex. 1**.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their proportionate share of the Net Settlement Fund based on numerous factors that are regularly used, and approved by federal courts in Oklahoma, to allocate class settlements of this nature. **Ex. 1**, Settlement Agreement at 22. Because all four factors weigh in favor of the Settlement here, Plaintiff respectfully requests the Court grant preliminary approval of the Settlement.

18

**C.    The Court Should Preliminarily Approve the Proposed Notice of the Settlement to the Settlement Class**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiff has submitted to the Court for approval the Notice of Settlement (the "Notice") that will be distributed to the Settlement Class, as well as a summary Notice (the "Summary Notice") that will be published in various newspapers. The Notice and Summary Notice (collectively, the "Notices") are attached to the Settlement Agreement as Exhibits 3 and 4, respectfully. As set forth in the Settlement Agreement, Plaintiff and Defendants have agreed that the Court-appointed Settlement Administrator shall disseminate the Notice by sending a copy of the Notice via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort and who has not opted out. **Ex. 1**, Settlement Agreement at 14. Plaintiff and Defendants further agreed that in the same time frame the Settlement Administrator shall publish (or cause to be published) the Summary Notice one time in each of the following newspapers: (a) The Oklahoman, a paper of general circulation in Oklahoma; and (b) the Tulsa World, a paper of general circulation in Oklahoma. Within ten days after mailing the first Notice and continuing through the date of the Final Fairness

19

Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notices; (b) the First Amended Complaint; (c) this Settlement Agreement; and (d) the Preliminary Approval Order. *Id.* The Notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notices will inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiff's Counsel's intent to request attorneys' fees, reimbursement of expenses, and case contribution award; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner through which they will be delivered and communicated to the Settlement Class.

### D.    Appointment of JND Legal Administration as Settlement Administrator Is Proper

To accomplish the processing of requests for exclusion and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiff respectfully requests the Court appoint JND Legal Administration ("JND") as the Settlement Administrator. JND is a leading class action administration company that has handled many complex class action settlements.[5] Further, under the terms of the Settlement Agreement, Plaintiff, Defendants, and their Counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiff respectfully requests the Court appoint JND as the Settlement Administrator.

### E.    Appointment of an Escrow Agent Is Proper

Additionally, Plaintiff respectfully requests the Court appoint an Escrow Agent. Pursuant to the Settlement Agreement, the Parties are negotiating an Escrow Agreement, which will be executed prior to a preliminary approval hearing, to carry out the duties assigned to the Escrow Agent. **Ex. 1**, Settlement Agreement at 5.

### CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court enter the agreed proposed Preliminary Approval Order, attached as Exhibit 1 to the Settlement Agreement (**Ex. 1** hereto), which will: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Class; (4) appoint Reagan E. Bradford and Ryan K. Wilson of Bradford & Wilson PLLC as Co-

---

[5] More information about JND can be found on its website at www.jndla.com.

Lead Class Counsel for the Settlement Class; (5) approve the form and manner of the proposed Notice; (6) appoint JND Legal Administration as Settlement Administrator; (7) appoint an Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Attorneys' Fees, Litigation Expenses, and Case Contribution Award to Plaintiff.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com
**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/ Reagan E. Bradford*
Reagan E. Bradford